UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMAN GUTIERREZ,

                Petitioner,

    - against -

CHRISTOPHER MILLER,

                Respondent.

## ORDER

17 Civ. 9570 (PGG) (SDA)

PAUL G. GARDEPHE, U.S.D.J.:

In this habeas corpus petition brought pursuant to 28 U.S.C. § 2254 (the "Petition"), pro se Petitioner Oman Gutierrez seeks an order vacating his convictions for Murder in the First Degree, N.Y. Penal Law § 125.27, Murder in the Second Degree, N.Y. Penal Law § 125.25, Conspiracy in the Second Degree, N.Y. Penal Law § 105.15, Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03, and Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02. (Pet. (Dkt. No. 2) at 1) On February 2, 2018, this Court referred the Petition to Magistrate Judge Stewart D. Aaron for a Report and Recommendation ("R & R"). (Order of Reference (Dkt. No. 8))

On April 17, 2019, Judge Aaron issued an R & R recommending that this Court deny the Petition, as well as Gutierrez's motions to stay and amend the Petition. (Dkt. No. 48) Gutierrez filed objections to the R&R on May 14, 2019. (Pet. Obj. (Dkt. No. 52))

For the reasons stated below, the R & R will be adopted in its entirety, and the Petition and Gutierrez's motions to amend and to stay the Petition will be denied.

### BACKGROUND

I.   **THE INDICTMENT**

On January 11, 2005, Jose Inoa shot Edward Contreras inside a grocery store in Upper Manhattan.  (Trial Tr.[1] ("Tr.") at 58, 164, 166-67, 175-79, 217, 273-76, 409-10, 1461-62, 1766-67, 2113-15, 2117-18)  Contreras died several hours later.  (Id. at 2176-77)

On March 27, 2009, a grand jury returned an indictment in connection with Contreras's murder, charging Gutierrez, Inoa, and others with murder in the first degree; murder in the second degree; attempted murder in the second degree; two counts of assault in the first degree; criminal possession of a weapon in the second degree; criminal possession of a weapon in the third degree; and conspiracy in the second degree.  (Indictment (Dkt. No. 18-2) at 98-112)

II.   **TRIAL**

On June 1, 2010, Gutierrez and Inoa proceeded to trial in Supreme Court of the State of New York, New York County, before the Honorable Gregory Carro.  (Tr. at 1-2, 13) The evidence is summarized below.[2]

---

[1] The state court trial transcript is filed at Docket Numbers 22 through 44.  Citations to the trial transcript refer to the pagination shown in that transcript.

[2] In his R & R, Judge Aaron incorporates relevant portions of Magistrate Judge James Cott's summary of the evidence at the Gutierrez-Inoa trial.  (R & R (Dkt. No. 48) at 3-9 (quoting Inoa v. Smith, No. 16-CV-2708 (VEC) (JLC), 2018 WL 4110908, at *3-8 (S.D.N.Y. Aug. 29, 2018))) Judge Cott addressed Inoa's habeas petition, which was denied by Judge Caproni in a February 9, 2019 order that adopted Judge Cott's R & R in its entirety.  See Inoa, 2018 WL 4110908, report and recommendation adopted, 2019 WL 549019 (Feb. 9, 2019).

A.    **The Evidence**

In the 1990s, Gutierrez led a drug trafficking organization that operated in and around West 204th Street and Post Avenue in Washington Heights. (R & R (Dkt. No. 48) at 2; Tr. at 1850-52) In connection with this activity, Gutierrez was convicted on drug charges in 2000 and was sentenced to six-years' imprisonment. (Id.; Tr. at 1858) While Gutierrez was incarcerated, Edward Contreras and others began selling marijuana in the area previously controlled by Gutierrez. (Id.; Tr. at 228-31, 575-76, 1710-11) As Gutierrez prepared for his release from prison, he plotted to kill Contreras and reassume control over his drug-selling locations. (Id. at 2, 5-6; Tr. at 576, 578-80)

Eldia Duran – Gutierrez's then girlfriend – accepted his calls from prison and acted as an intermediary between Gutierrez and his associates as they plotted the murder of Contreras. (Id. at 5; Tr. at 553-58, 563-64, 575-76) Inoa – Gutierrez's childhood friend – agreed to kill Contreras in exchange for $10,000. (Id. at 5-6; Tr. at 874-76, 981, 985, 1244, 2551) In the early morning of January 11, 2005, Inoa shot Contreras, who died several hours later. (Id. at 6-7; Tr. at 58, 164, 166-67, 175-79, 217, 273-76, 409-10, 1461-62, 1766-67, 2113-15, 2117-18, 2176-77)

The People called eighteen witnesses at trial. (Id. at 3) The testimony of three significant witnesses is briefly summarized below.

---

The parties have not objected to Judge Aaron's adoption of Judge Cott's summary of the evidence at trial. Accordingly, this Court adopts the factual statement set forth in Judge Aaron's R & R, and only summarizes portions of the proof below. See Silverman v. 3D Total Solutions, Inc., No. 18-CV-10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

### 1.   Officer Rolando Rivera

Officer Rolando Rivera began investigating Gutierrez's drug trafficking operation in 1999 as a member of the New York City Police Department's narcotics unit. (Id. at 3-4; Tr. at 1830, 1839, 1845, 1850) During that investigation, Rivera listened to "hundreds of hours" of wiretapped calls between Gutierrez and his associates. (Id. at 3 (quoting Tr. at 1841)) Rivera determined that Gutierrez and his associates spoke in "coded" language about their illegal activities. (Id. (quoting Tr. at 1842-43)) After preparing hundreds of transcripts from wiretaps, Rivera became familiar with this coded language. (Id. at 4; Tr. at 2728) Prior to trial, Rivera also reviewed tape recordings of 77 phone calls that Gutierrez made between December 2004 and May 2005 while incarcerated. (Id. at 3; Tr. at 2693-94) Rivera – a native Spanish speaker – translated and prepared transcripts of excerpts from these calls. (Id.; Tr. at 1834, 2673-75, 2718-19, 2728) These transcripts and the 77 recordings were admitted into evidence at trial. (Id.; Resp. Br. (Dkt. No. 19) at 16 (citing People Exs. 51-53 (recordings), 54, 56, 61-63, 66, 68-77, 175-176 (transcripts)) Given Rivera's knowledge and experience, Justice Carro "deemed [Rivera] an expert in decoding phone conversations," and permitted him to offer opinion evidence concerning the meaning of a number of the intercepted conversations. (Id. at 4 (quoting Tr. at 1929))

### 2.   Eldia Duran

Duran had first-hand knowledge of the plot to kill Contreras as a result of her participation in and coordination of the three-way calls between Gutierrez – then in prison – and co-conspirators. (Id.; Tr. at 556-58, 562, 764-65) Duran testified that while Gutierrez was incarcerated, he was permitted to call only certain landline phones, including Duran's. (Id. at 5; Tr. at 529) Gutierrez called Duran on her landline phone, and then – at Gutierrez's request –

Duran conferenced in Inoa and other co-conspirators. (Id.; Tr. at 554, 563-64) Duran testified that Gutierrez required her to stay on the line in case Gutierrez wanted to be transferred to another associate. (Id.; Tr. at 1122, 1124, 1243) As a result, Duran listened in on Gutierrez's conversations, in which he often discussed his drug business and his plot to murder Contreras. (Id.; Tr. at 553-58, 562-64, 575-76, 764-65) At trial, Duran testified about Gutierrez's role in the plot to murder Contreras, including his decision that Inoa would be the shooter. (Id. at 5-6; Tr. at 745-47)

### 3.    Joan Lopez

Joan Lopez sold drugs for Gutierrez. (Id. at 4) On July 3, 2004, Lopez observed Inoa in a building that Contreras and his organization used to sell drugs. (Tr. at 1687, 1716–18) Lopez saw Inoa "roughing . . . up" one of Contreras's "workers" in order to force him to "make the call to tell the bosses" – one of whom was Contreras – "to come down." (Tr. at 1687, 1689) Lopez then observed Inoa being chased out of Contreras's drug spot, and saw Inoa turn around and fire a shot. (Tr. at 1689) After firing the shot, Inoa said that it was a "message" for the "boss." (Tr. at 1689, 1721, 1741)

At trial, Inoa objected to Lopez's anticipated testimony about the "uncharged incident . . . on July 3, 2004," arguing that it was "propensity" evidence. (Tr. at 1663) Justice Carro allowed the evidence to show a "foiled attempt . . . at fulfilling a conspiracy." (Tr. at 1665) The People's theory at trial was that "Inoa shot and killed Edward Contreras [on January 11, 2005] and that on July 3rd, 2004 he tried to do it and was thwarted." (Tr. at 1666)

### B.    Verdict and Sentence

On July 1, 2010, the jury convicted Gutierrez of murder in the first degree, murder in the second degree, criminal possession of a weapon in the second degree, criminal

possession of a weapon in the third degree, and conspiracy in the second degree. (Id. at 3133-35;

Pet. (Dkt. No. 2) ¶¶ 1-5)  On December 14, 2010, Justice Carro sentenced Gutierrez to a prison

term of 52 ½ years to life.  (Sent. Tr. (Dkt. No. 44) at 113; Pet. (Dkt. No. 2) ¶ 3)

## III.   APPELLATE PROCEEDINGS

On March 17, 2014, Gutierrez appealed his convictions to the Appellate Division,

First Department.  (Response, Ex. A. (Dkt. No. 18-1))  On direct appeal, Gutierrez argued that

the trial judge improperly admitted (1) evidence of prior bad acts; (2) testimony from Duran

"concerning [her] interpretations of recorded audio transcripts that were not in evidence"; (3)

"testimony concerning the existence of 'multiple conspiracies' that were not part of the charged

offense"; and (4) expert testimony from Detective Rivera "concerning general narcotics

trafficking that was not part of the charged offense."  Gutierrez also argued that "the jury's

verdict was against the weight of the evidence."  (Id. at 9)

In a July 14, 2015 opinion, the First Department affirmed Gutierrez's convictions.

See People v. Gutierrez, 130 A.D.3d 517 (1st Dept. 2015).  The First Department held that "[t]he

[trial] court properly received evidence that the conspiracy to commit murder was intended to

eliminate a rival drug dealer, Contreras, and thus to regain control of drug trafficking in a

particular area," and that "[t]here was no variance between the murder conspiracy charged in the

indictment and the one proved at trial."  Id. at 518.

As to Rivera's testimony, the First Department acknowledged that, in connection

with Inoa's appeal, the New York Court of Appeals found that "'considerable portions of

Detective Rivera's testimony' [at trial] as an expert in decoding phone conversations 'were

admitted in error.'"  Id. (quoting People v. Inoa, 25 N.Y.3d 466, 472 (2015)).  The First

Department noted, however, that the Court of Appeals had determined that the error was

harmless as to Inoa, and the First Department concluded that the same conclusion applied to Gutierrez: "here, as in Inoa, 'the proof of defendant's commission of the charged crimes was overwhelming and we perceive no significant probability that, but for the error, the verdict would have been less adverse.'" Id. (quoting People v. Inoa, 25 N.Y.3d 466, 472 (2015)).

As to Duran's testimony concerning the audio recordings, the First Department found – as had the New York Court of Appeals in connection with Inoa's appeal – that her testimony was "'powerfully confirmed by the manifest content of the taped conversations.'" Id. at 519 (quoting People v. Inoa, 25 N.Y.3d 466, 476 (2015))

On August 25, 2015, Gutierrez petitioned the New York Court of Appeals for leave to appeal the First Department's decision.  (Response, Ex. G. (Dkt. No. 18-1))  In his brief, Gutierrez sought "leave to appeal from every part of the July 14, 2015 decision of the Appellate Court." (Id. at 203)  He also raised several new arguments, including that the trial judge's instruction regarding intent was erroneous, and that the trial judge had improperly dismissed a juror. (Id. at 197-98)  On January 7, 2016, the New York Court of Appeals denied Gutierrez leave to appeal.  See People v. Gutierrez, 26 N.Y.3d 1109 (2016).

On July 7, 2016, Gutierrez moved before the First Department for a writ of coram nobis, contending that he had been denied effective assistance of appellate counsel. (Response, Ex. J. (Dkt. No. 18-2))  Gutierrez asserted that his appellate lawyer "failed to consult with [him] about issues that had some basis in the record that he failed to raise in his appellant brief." (Gutierrez Aff. (Dkt. No. 18-2) at 6)  Gutierrez's application for a writ of coram nobis was denied on October 25, 2016; his request for leave to appeal that decision was denied on March 29, 2017.  (See Order (Dkt. No. 18-2) at 50; People v. Gutierrez, 29 N.Y.3d 949 (2017))

7

IV.   **HABEAS PETITION**

On December 5, 2017, Gutierrez – proceeding pro se – filed the instant habeas petition.  (See Pet. (Dkt. No. 2))  In his petition, Gutierrez contends that the trial court deprived him of a fair trial by admitting (1) testimony regarding prior bad acts; (2) "testimony of Duran concerning her interpretations of recorded audio transcripts"; (3) "testimony concerning the existence of multiple conspiracies that were not part of the charged offense"; and (4) expert testimony from Detective Rivera regarding narcotics trafficking that was not part of the charged offense. (Pet. (Dkt. No. 2) ¶ 12)  Gutierrez also claims that he was denied effective assistance of counsel on appeal.  (Id.)

In a February 20, 2018 letter, Gutierrez asserts two additional, unexhausted grounds for habeas relief:  (1) that his Sixth Amendment right to a public trial was violated when the trial court "ejected petitioner's family members from the courtroom"; and (2) that he "was denied the right to be present at material stages of [his] case."  (Feb. 20, 2018 Ltr. (Dkt. No. 12) at 2-5)  Gutierrez moves for a stay of the instant action "to allow him the opportunity to exhaust [these] unexhausted claims."  (Id. at 5)

In a March 16, 2018 order, Magistrate Judge Aaron denied without prejudice Gutierrez's motion to stay.  (Dkt. No. 15)  Judge Aaron explained to Gutierrez that, in order to obtain a stay, he would have to show that "(1) there is good cause for [his] failure to exhaust the unexhausted claims in state court before bringing a federal habeas petition; and (2) the unexhausted claims are not 'plainly meritless.'"  (Id. at 6 (quoting Rhines v. Weber, 544 U.S. 269, 277 (2005))

In a May 9, 2018 letter, Gutierrez moved to amend the Petition to add the two unexhausted claims.  (Dkt. No. 16)  In his letter, Gutierrez acknowledges that he

ultimately knew about the claims he now attempts to amend, [but] his administrative segregation circumstances in conjunction with his first grade reading level, lack of reading comprehension and trouble with writing English prevented him from discovering the factual predicate of the proposed new claim[s] through the exercise of due diligence.

(Id. at 2)

## V.    THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On April 17, 2019, Judge Aaron issued an R & R recommending that Gutierrez's petition, and motions to amend and to stay, be denied in their entirety.  (R & R (Dkt. No. 48))

As to Gutierrez's claim regarding evidence of prior bad acts, Judge Aaron finds "[t]he claim is unexhausted, and thus it is procedurally barred."  (Id. at 20)  Judge Aaron further concludes that Gutierrez has "not show[n] cause and prejudice to overcome the procedural bar." (Id.)  Notwithstanding the procedural bar, Judge Aaron goes on to find that this claim "is not cognizable on habeas review," because it "is rooted in evidentiary rulings made by the state court concerning the admissibility of certain testimony."  (Id. at 21)  Given "the overwhelming evidence presented at trial against Petitioner," "the claim . . . does not rise to the level of constitutional deprivation of due process."  (Id. at 22)  "[O]n the merits," Judge Aaron finds no error in the trial court's admission of testimony regarding the July 2004 shooting incident involving Inoa and Contreras, given its "relevan[ce] to Inoa's prosecution for the murder of Contreras."  (Id.)

As to Duran's interpretation of Gutierrez's recorded conversations, Judge Aaron finds that the trial "court did not act unreasonably."  (Id. at 23)  As to the Confrontation Clause, "Duran's knowledge of the conspiracy came firsthand from statements made by the coconspirators as part of the conspiracy, and . . . any hearsay statements admitted were admissible under hearsay exceptions."  (Id. at 24)

As to Gutierrez's multiple conspiracies argument, Judge Aaron finds a failure to exhaust, because Gutierrez "did not fairly present this [argument] as a federal claim to the state court below." (Id. at 25)  Despite the procedural bar, Judge Aaron reaches the merits of Gutierrez's claim, and concludes that the "[trial] court[] . . . acted reasonably." (Id. at 26) "'There was no need for a multiple conspiracies charge, because the evidence clearly established a single conspiracy.'"  Moreover, "'[i]t was clear from the court's charge that the People were required to prove a murder conspiracy, and the jury could not have been misled to believe that a drug conspiracy would serve as a basis for conviction.'" (Id. (quoting People v. Gutierrez, 130 A.D.3d 517, 518 (1st Dept. 2015))

As to the admission of Detective Rivera's testimony as a "quasi expert" on narcotics trafficking (Pet. (Dkt. No. 2) at 8), Judge Aaron agreed with the state court decisions in People v. Inoa, 25 N.Y.3d 466, 473-75 (2015) and People v. Gutierrez, 130 A.D.3d 517, 518 (1st Dept. 2015) that "much of Detective Rivera's testimony was admitted in error, but that such error was harmless." (R & R (Dkt. No. 48) at 27)

With respect to Gutierrez's claim of ineffective assistance of appellate counsel, Judge Aaron finds that "Petitioner's appellate counsel did not act unreasonably, and [the] state court's denial of Petitioner's claim of ineffective assistance of counsel was not unreasonable." (Id. at 30 (citing Harrington v. Richter, 562 U.S. 86, 101 (2011)))  As to Gutierrez's first ground for ineffective assistance – that appellate counsel erred in not arguing that the trial judge committed error in "removing a juror and then placing the dismissed juror back on the jury panel after speaking to the prosecutor . . . over objection" (Pet. (Dkt. No. 2) at 9) – Judge Aaron finds the argument to be "factually incorrect." (R & R (Dkt. No. 48) at 28)  The trial transcript shows that "[t]he dismissed juror was not put back on the jury after she was dismissed on consent." (Id.

10

at 29 (citing Tr. at 3118-22))  As to the second ground for ineffective assistance of appellate

counsel – that appellate counsel erred in not arguing that the "the trial court's 'expanded [jury]

charge[]'" on intent deprived petitioner of a fair trial (id. at 28 (quoting Pet. (Dkt. No. 2) at 9)) –

Judge Aaron finds that the "expanded" intent instruction (Tr. at 3128-29) was "substantially the

same" as New York's model instruction.  (R & R (Dkt. No. 48) at 29)  Appellate counsel's

decision not to raise this issue on appeal thus "fell 'within the wide range of reasonable

professional assistance.'"  (Id. at 30 (quoting Strickland v. Washington, 466 U.S. 668, 689

(1984)))

Judge Aaron also recommends that Gutierrez's motions to stay and to amend be

denied.  (Id. at 30-33)  As an initial matter, Judge Aaron notes that Gutierrez's judgment became

final on April 6, 2016 – ninety days after the New York Court of Appeals' January 7, 2016 order

denying him leave to appeal.  (Id. at 31 (citing McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir.

2003)))  Because state prisoners have one year from the date of final judgment to file a habeas

petition (id. (citing 28 U.S.C. § 2244(d)(1)-(2))), the new claims presented in Gutierrez's

February 20, 2018 letter (Dkt. No. 12) are time-barred under the AEDPA.  (R & R (Dkt. No. 48)

at 31)  As such, "futility serves as a basis for denying amendment."  (Id. (citing Sookoo v. Heath,

No. 09-CV-9820 (JGK), 2011 WL 6188729, at *3 (S.D.N.Y. Dec. 12, 2011)))  Judge Aaron

further finds that Gutierrez cannot "escape AEDPA's statute of limitations" through "the

doctrine of equitable tolling," because Gutierrez's claims about his prison conditions and lack of

education do not provide a basis for equitable tolling.  (Id. at 31-32)

Despite this procedural bar, Judge Aaron goes on to consider the merits of the two

unexhausted claims, and concludes that "neither claim raises a violation of any constitutional

right."  (Id. at 32)  As to Gutierrez's argument that the alleged exclusion of his family members

from the courtroom denied Gutierrez "his Sixth Amendment right to a public trial" (Feb. 20, 2018 Ltr. (Dkt. No. 12) at 2), Judge Aaron finds no constitutional violation, "as Petitioner's trial was still open to the public." (R & R (Dkt. No. 48) at 32 n.23)  As to Gutierrez's complaint that he "was denied the right to be present at material stages of the case" (Feb. 20, 2018 Ltr. (Dkt. No. 12) at 4), Judge Aaron finds that Gutierrez's "absence at the hearing on the motion to set aside the verdict was harmless," because the hearing was "'a peripheral proceeding of secondary importance.'" (R & R (Dkt. No. 48) at 33 (quoting Yarborough v. Keene, 101 F.3d 894, 898 (2d Cir. 1996)))

Given that Gutierrez's unexhausted claims are both "time-barred[] and meritless," Judge Aaron concludes that he "has not demonstrated that a stay is warranted." (Id. at 33 (citing Rhines v. Weber, 544 U.S. 269, 277 (2005)))

## VI.   PETITIONER'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

On May 14, 2019, Gutierrez filed the following objections to the R & R:

1. Judge Aaron erred in concluding that Gutierrez has not shown cause and prejudice to overcome the procedural bar to his claim regarding the prior bad acts evidence (Pet. Obj. (Dkt. No. 52) at 1);

2. Judge Aaron should have found that Duran's testimony "was so prejudicial that it violated the Confrontation Clause" (id. at 2);

3. Judge Aaron should have concluded that the trial court's admission of Detective Rivera's testimony "as an expert in decoding phone conversations" was not harmless error (id. at 2-4);

4. Judge Aaron erred in finding that "'the conduct of Petitioner's appellate counsel fell within the wide range of reasonable professional assistance,'" and should have concluded that "the state court's application of the Strickland standard was unreasonable" (id. at 4-5 (quoting R & R (Dkt. No. 48) at 30)); and

5. Judge Aaron should have found that equitable tolling applied to Gutierrez's unexhausted claims, and granted Gutierrez's motions to stay and amend the Petition. (Id. at 5)

## DISCUSSION

## I.    REVIEW OF A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In reviewing a magistrate judge's R & R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to a magistrate judge's R & R.  Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

Where, as here, a party submits objections to an R & R, "[the district court] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3).  "[O]bjections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal'" in order to invoke de novo review.  See McDonaugh v. Astrue, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).  "[Where] a 'party makes only conclusory or general objections, or simply reiterates the original arguments,' the court reviews the R & R strictly for clear error." Covington v. Five Points Corr. Facility, No. 11-CV-8761 (AT) (FM), 2016 WL 3407845, at *1 (S.D.N.Y. June 16, 2016) (quoting Rivera v. Colvin, No. 11-CV-7469 (LTS), 2014 WL 3732317, at *1 (S.D.N.Y. July 28, 2014)).  A decision is "clearly erroneous" where, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

The objections of parties proceeding pro se "'are generally accorded leniency,'"

Milano v. Astrue, No. 05-CV-6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (quoting Dixon v. Ragland, No. 03-CV-826 (LTS) (KNF), 2007 WL 4116488, at *1 (S.D.N.Y. Nov. 16, 2007)), and "construe[d] . . . to 'raise the strongest arguments that they suggest.'" Id. (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "'Nonetheless, even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quoting Pinkney v. Progressive Home Health Servs., No. 06-CV-5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008), aff'd, 367 F. App'x 210 (2d Cir. 2010)).

## II.   LEGAL STANDARDS FOR SECTION 2254 PETITIONS

### A.   The Exhaustion Requirement

"[B]efore a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)). The exhaustion requirement has two components. Parrish v. Lee, No. 10-CV-8708 (KMK), 2015 WL 7302762, at *6 (S.D.N.Y. Nov. 18, 2015).

A court must first consider whether petitioner "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'" Id. (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)).

> A petitioner may satisfy the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Carvajal, 633 F.3d at 104 (quoting Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982)).

   "'Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.'" Parrish, 2015 WL 7302762, at *7 (quoting Klein, 667 F.2d at 282). In connection with this requirement, "the Supreme Court has held that when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claim procedurally barred." Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

   "In New York, . . . a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." Sparks v. Burge, No. 06-CV-6965 (KMK) (PED), 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012); see also DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (affirming the "denial of [a] habeas petition on the grounds, inter alia, that [petitioner's] claims were not properly exhausted" where "they were not properly presented to New York's highest court").

   Where a habeas petitioner's claim is subject to a procedural bar, he "may avoid such a default . . . by showing cause for the default and prejudice, or that failure to consider the

claim will result in a miscarriage of justice, i.e., the petitioner is actually innocent." Sweet, 353

F.3d at 141.

**B.**     **Deference to State Court Decisions**

When reviewing a petition for habeas relief from a state court judgment, the

Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254(d),

requires federal courts to give deference to state court decisions on the merits.  See Harrington v.

Richter, 562 U.S. 86, 101 (2011) ("A state court must be granted a deference and latitude that are

not in operation when the case involves [direct] review [of a criminal conviction].").

Section 2254(d) provides that

[a]n application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has emphasized that, "[f]or purposes of § 2254(d)(1), 'an

unreasonable application of federal law is different from an incorrect application of federal

law.'"  Harrington, 562 U.S. at 101 (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)

(emphasis in original)).  "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision."  Id. (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s

a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." Id. at 103.  This high standard "reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a

substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v.

Virginia, 443 U.S. 307, 332 n. 5 (1979)).

## III.    ANALYSIS

### A.    Objection Regarding Prior Bad Acts Evidence

In his objections, Gutierrez contends that Judge Aaron erred in rejecting his claim

regarding evidence of the July 2004 shooting incident involving Inoa.

As discussed above, Judge Aaron addressed the merits of this claim, despite

finding that it has not been exhausted.  (See R & R (Dkt. No. 48) at 21 ("Even if Petitioner's first

ground was not procedurally barred, it is not cognizable on habeas review."); id. at 22 ("[E]ven

reviewing the claim on the merits, the Court finds that the state court's determination was

reasonable.")

As an initial matter, Judge Aaron correctly concludes that Gutierrez "did not

fairly present this claim as a federal claim to the state court," and thus the claim has not been

exhausted.  (R & R (Dkt. No. 48) at 21 (citing Baldwin v. Reese, 541 U.S. 27, 32 (2004)))

Although Gutierrez objected to evidence of the July 2004 shooting incident in his direct appeal

to the First Department, he cited exclusively to state court precedent, without any reference to

the Constitution or federal law.  (Pet. Br. (Dkt. No. 18-1) at 50-52)  And the First Department did

not treat Gutierrez's arguments regarding the admission of this evidence as in any way

implicating federal constitutional rights.  (See July 14, 2015 Order (Dkt. No. 18-1) at 158-62)

In his objections, Gutierrez argues that this Court should "apply the 'cause and prejudice' test to overcome the procedurally defaulted claims." (Pet. Obj. (Dkt. No. 52) at 1 (citing Pet. Reply Br. (Dkt. No. 47) at 58)) As Judge Aaron correctly notes, however, Gutierrez "does not demonstrate (nor does he attempt to) cause for his failure to exhaust his claim, nor actual prejudice." (R & R (Dkt. No. 48) at 21)

Gutierrez now asserts that appellate "'counsel's performance was deficient in that he failed to file an application to the New York Court of Appeals [for leave to appeal regarding the prior bad acts evidence].'" (Pet. Obj. (Dkt. No. 52) at 1 (citing Pet. Reply Br. (Dkt. No. 47) at 58)) But it was Gutierrez proceeding pro se – and not appellate counsel – who applied for leave to appeal the First Department's decision, and thus it was Gutierrez's decision not to raise the prior bad acts issue in the motion for leave to appeal that was submitted to the New York Court of Appeals. (See Aug. 25, 2015 Pet. Br. (Dkt. No. 18-1) at 193-211; People v. Gutierrez, 26 N.Y.3d 1109 (2016)).

Even if Gutierrez could show cause and prejudice to overcome the procedural bar, this Court agrees with Judge Aaron that "the state court's [evidentiary] determination was reasonable." (R & R (Dkt. No. 48) at 22) Under New York law, evidence of other crimes is admissible when such evidence can "logically be linked to some specific material issue in the case," and is not used solely to demonstrate a defendant's criminal propensity. People v. Hudy, 73 N.Y.2d 40, 54 (1988), abrogated on other grounds by Carmell v. Texas, 529 U.S. 513 (2000); see also People v. Blair, 90 N.Y.2d 1003, 1004-05 (1997). Here, there was an obvious connection between (1) Inoa's July 3, 2004 shooting at a Contreras drug trafficking location and (2) the 2004-05 plot to murder Contreras and the plan to assume control over the drug trafficking spots that Gutierrez had lost when he was incarcerated. Proof of the earlier shooting by Inoa

supported the Government's theory that Gutierrez ordered Contreras's murder as part of a plan to take over his drug territory. Accordingly, proof of the July 3, 2004 shooting was not offered "to demonstrate [Inoa's or Gutierrez's] criminal propensity," but rather was relevant "to the material issue" of whether Inoa was a participant in the charged conspiracy to murder Contreras. (See Tr. at 1687-89) As Justice Carro explained at trial, this evidence shows "a foiled attempt . . . at fulfilling a conspiracy" that was later successfully consummated. "[O]n July 3rd, 2004 [Inoa] tried to [murder Contreras] and was thwarted." On January 11, 2005, he completed the object of the conspiracy by "sho[oting] and kill[ing] Edward Contreras." (Id. at 1665-66)

   This Court finds no error in the admission of evidence concerning the July 3, 2004 shooting.

### B.  **Objection Concerning Officer Rivera's Testimony**

   As to Justice Carro's decision to permit Officer Rivera to testify "as an expert in decoding [Gutierrez's] phone conversations," Judge Aaron agrees with the First Department's determination that any error associated with this determination was harmless. (R & R (Dkt. No. 48) at 27-28) The First Department addressed this issue as follows:

> Although the Court of Appeals determined in People v. Inoa (25 N.Y.3d 466 [2015]), that considerable portions of Detective Rivera's testimony as an expert in decoding phone conversations were admitted in error, here, as in Inoa, the proof of defendant's commission of the charged crimes was overwhelming and we perceive no significant probability that, but for the error, the verdict would have been less adverse (see People v. Crimmins, 15 36 N.Y.2d 230 [1975]).

People v. Gutierrez, 130 A.D.3d 517, 518 (2015).

   Although Gutierrez objects to the R & R's treatment of this issue (Pet. Obj. (Dkt. No. 52) at 2-4), he has not demonstrated that the First Department's "harmless error" determination is unreasonable. To the extent the trial judge improperly allowed Rivera to interpret certain of Gutierrez's recorded prison calls, the meaning of the language used "on the

prison tapes was manifest and [was] not in need of express, much less expert, clarification."
"Rivera's imprimatur . . . was [thus] entirely dispensable to the already overdetermined
conclusion that the substantial sum earmarked for and expressly promised [Inoa] by [Gutierrez],
could have been referable only to his murder of Contreras." People v. Inoa, 25 N.Y.3d 466, 476
(2015).

Justice Carro also issued limiting instructions to the jury concerning Rivera's
expert testimony.  (See Tr. at 2486 (instructing jury that Rivera "is not a voice expert" with
respect to identifying voices on the recorded calls); id. at 3040 (instructing jury that expert
testimony should be considered "just as you would the testimony of any other witness," and that
the jury "may accept or reject such testimony in whole or in part.")) These limiting instructions,
considered together with the clear nature of the calls "interpreted" by Rivera and the compelling
independent evidence of the Defendant's guilt, give confidence that Rivera's testimony did not
deprive Gutierrez of a fundamentally fair trial.  See, e.g., Williams v. Jacobson, No. 15-CV-5319
(ER) (JLC), 2016 WL 4154700, at *17 (S.D.N.Y. Aug. 5, 2016), report and recommendation
adopted, 2016 WL 7176648 (S.D.N.Y. Dec. 7, 2016) ("Even if permitting the bulletin's entry as
evidence . . . was erroneous as a matter of state law, any such error by the trial court did not
deprive Williams of a fundamentally fair trial, given the bulletin's relevance to an issue in the
case, the strong evidence against him, and the trial court's limiting instructions."); see also
United States v. Dukagjini, 326 F.3d 45, 62 (2d Cir. 2003) (quoting Kotteakos v. United States,
328 U.S. 750, 765 (1946)) ("[T]he error in admitting the improper aspects of [the expert's]
testimony did not have a 'substantial influence' on the jury's verdict.").

Petitioner's objection concerning Officer Rivera's testimony will be overruled.

C.    **Objection Concerning Duran's Testimony**

As to Duran, Gutierrez complains that her testimony was based on hearsay rather than firsthand knowledge, and he contends that the "totality of her testimony was so prejudicial that it violated the confrontation clause [as set forth] in Crawford v. Washington, 541 U.S. 36 (2004)." (Pet. Obj. (Dkt. No. 52) at 2)  This Court agrees with Judge Aaron that "the state court did not act unreasonably in admitting Duran's testimony." (R & R (Dkt. No. 48) at 23)

The Confrontation Clause bars the admission of "testimonial" statements from a non-testifying witness. Crawford, 541 U.S. at 51-52. A "testimonial statement" is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51. However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." Id. at 59 n.9.

Duran's testimony concerning Gutierrez's conversations regarding the murder conspiracy was premised not on hearsay, but on her firsthand knowledge.  Between 2004 and 2005, Gutierrez called Duran from prison several times a day.  He often directed her to conference in relatives and associates.  (Tr. at 554-55, 1122-24, 1243)  Gutierrez instructed Duran to remain on the line during many of his three-way calls with associates (Id. at 1122-24, 1243), during which Gutierrez discussed the plot to murder Contreras.  (Id. at 556-58, 562, 764-65)  Duran thus listened in on Gutierrez's telephone calls from prison, which were recorded and later admitted into evidence at trial.  (Id. at 553-58, 562-64, 764-65, 1122-24; Resp. Br. (Dkt. No. 19) at 16 (citing the People's Trial Exs. 51-53 [recordings]))

In addition to Gutierrez's recorded prison calls, Duran testified that – beginning in April 2004 – Gutierrez began in-person discussions with her about his plan to murder Contreras. (Tr. at 573-80, 733-36)  Based on Duran's firsthand knowledge of the recorded calls and her in-

person conversations with Gutierrez, Duran testified in detail about his involvement in the plot to murder Contreras.  (See, e.g., id. at 627-28, 725-29)  Accordingly, while Gutierrez contends that "an appalling amount of [Duran's] testimony . . . consisted of mere conclusions based on information she did not directly witness" (Pet. Obj. (Dkt. No. 52) at 2), Duran had intimate knowledge of Gutierrez's plot to kill Contreras.

Duran's testimony regarding what she heard on the recorded calls was also admissible pursuant to the hearsay exception for co-conspirator statements.  Under New York law, a "declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule." People v. Caban, 5. N.Y.3d 143, 148 (2005) (internal quotation mark and citations omitted).  As such, her testimony does not present a Confrontation Clause issue.  See People v. Inoa, 109 A.D.3d 765, 766 (1st Dept. 2013) (finding no Confrontation Clause violation because Duran's testimony "did not introduce any testimonial statements made by nontestifying declarants"); see also Fed. R. Evid. 801(d)(2)(E).

Accordingly, Gutierrez's objection regarding Duran's testimony will be overruled.

### D.   Objection Regarding Ineffective Assistance of Appellate Counsel

In Gutierrez's objection concerning the alleged ineffective assistance of appellate counsel, he simply reiterates arguments made in the Petition and in earlier briefing.  (Compare Pet. Obj. (Dkt. No. 52) at 4 (arguing that appellate counsel "made no mention of the 'expanded charge' nor the 'removal and replacement of [a] juror'") with Pet. Reply Br. (Dkt. No. 47) at 59-61 (contending that appellate counsel should have addressed the trial court's "expanded charge"

on intent and "the removal and replacement of [a] juror"))  Accordingly, as to this objection, the Court reviews the R &R for clear error.

As an initial matter, Gutierrez complains that "the Appellate Division, in denying [his] <u>coram</u> <u>nobis</u> application, did not cite any legal authority in support of its denial [or] give its reasoning," and accordingly its "application of the <u>Strickland</u> standard was unreasonable."  (Pet. Obj. (Dkt. No. 52) at 4-5)

The Second Circuit has made clear, however, that deference to a state court decision is required even where, as here, the state court has not explained its reasoning.  In <u>Sellan</u> <u>v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001), the court emphasized that "[n]othing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process," and that "[n]owhere does the [AEDPA] make reference to the state court's process of reasoning."  Accordingly, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to a judgment[,] . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  <u>Id.</u> at 311-12.

Applying this test, the Second Circuit determined that Sellan's claim had been adjudicated on the merits by virtue of an Appellate Division decision that reads as follows:

> Motion by defendant for a writ of coram nobis to vacate an order of this court dated October 3, 1988, which affirmed a judgment of the Supreme Court, Queens County, rendered March 16, 1987, on ground of ineffective assistance of appellate counsel.  (<u>People v. Bachert</u>, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318.)
>
> Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is
>
> ORDERED that the motion is denied.

<u>Id.</u> at 308 (citation omitted).

The Appellate Division's order at issue in <u>Sellan</u> is substantively identical to the

First Department's October 25, 2016 order denying Gutierrez's motion for a writ of <u>coram</u> <u>nobis</u>,

which reads as follows:

> A decision and order of this Court having been entered on July 14, 2015,
> unanimously affirming a judgment of the Supreme Court, New York County
> (Gregory Carro, J.), rendered on December 14, 2010,
>
> And defendant-appellant having moved, in the nature of a writ of error coram
> nobis, for a review of his claim of ineffective assistance of appellate counsel, and
> for related relief,
>
> Now, upon reading and filing the papers with respect to the motion, and due
> deliberation having been had thereon,
>
> It is ordered that said application is denied.

(Oct. 25, 2016 Order (Dkt. No. 18-2) at 50 (citation omitted))

Accordingly, AEDPA deference is owed to the First Department's decision even

though that court did not set forth its reasoning in denying Gutierrez's motion.

As Judge Aaron acknowledges (R & R (Dkt. No. 48) at 16-17), to establish a

constitutional violation for ineffective assistance of appellate counsel, a petitioner must first

show that counsel's performance "fell below an objective standard of reasonableness."

<u>Strickland</u>, 466 U.S. at 688.  Under <u>Strickland</u>, however, there is a "strong presumption" that a

lawyer's conduct "falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689.

And because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . .

when the two apply in tandem, review is doubly so."  <u>Harrington</u>, 562 U.S. at 105 (internal

quotation marks and citations omitted).

Here, Judge Aaron concludes that appellate counsel's conduct "fell 'within the

wide range of reasonable professional assistance.'"  (R & R (Dkt. No. 48) at 30 (quoting

<u>Strickland</u>, 466 U.S. at 689))  Gutierrez's current claims – which involve the trial judge's

"expanded charge" on intent and his alleged failure to "remov[e] and replace[] [a] juror" (Pet. Obj. (Dkt. No. 52) at 4) – are not "of a meritorious nature."

As Judge Aaron finds, Gutierrez's complaint that a dismissed juror was improperly put back on the jury is factually wrong.  (R & R (Dkt. No. 48) at 28-29)  During deliberations, a juror sent out a note stating that she could no longer be "fair and impartial."  (Tr. at 3118)  Both sides consented to the juror being excused, and an alternate juror was substituted in her place.  (Id. at 3121-22)  Although Gutierrez's counsel objected to the prosecutor's later contact with the dismissed juror, the trial judge rejected that complaint, noting that "she is a dismissed juror" and that the prosecutor's contact with her after her dismissal could not "in any way . . . affect this jury."  (Id. at 3130-31)  In sum, there was no basis for appellate counsel to present the issue now cited by Gutierrez as a viable claim on appeal.

With respect to Gutierrez's complaint that the trial judge gave an "expanded charge" on criminal intent (Pet. Obj. (Dkt. No. 52) at 4), Judge Aaron found that Justice Carro's instruction on intent was "substantially the same" as that found in the New York Unified Court System's model instructions.  (R & R (Dkt. No. 48) at 29; compare Tr. at 3128-29 with N.Y. CJI2d ("Expanded Charge on Intent") (https://www.nycourts.gov/judges/cji/1-General/CJI2d.Intent.pdf))  Moreover, Gutierrez has not explained how Justice Carro's instruction on intent was erroneous.

In sum, there was no basis for appellate counsel to raise either of the issues now cited by Gutierrez.  Accordingly, "Petitioner's appellate counsel did not act unreasonably, and [the] state court's denial of Petitioner's claim of ineffective assistance of counsel was not unreasonable."  (R & R (Dkt. No. 48) at 30)

### E.     Objection Concerning Petitioner's Motions to Amend and Stay

Gutierrez objects to Judge Aaron's finding that Gutierrez's motions to amend and

stay would be futile, because his two unexhausted claims are time-barred and equitable tolling

does not apply.  (R & R (Dkt. No. 48) at 30-33)

As an initial matter, Gutierrez does not object to Judge Aaron's finding that

Gutierrez's two new claims are untimely under the AEDPA, and this Court sees no error in that

determination.  (R & R (Dkt. No. 48) at 31)  Gutierrez contends, however, that equitable tolling

should apply to "allow him a reasonable period of time to file his two unexhausted claims" and

amend his petition.  (Pet. Obj. (Dkt. No. 52) at 5)

For equitable tolling to apply in connection with a habeas petition, a petitioner

must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631,

649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  As Judge Aaron found,

Gutierrez has not demonstrated that he diligently pursued his rights or that extraordinary

circumstances prevented a timely filing.  (R & R (Dkt. No. 48) at 31-32)  Indeed, Gutierrez

waited nearly eight years after his trial to raise these unexhausted claims.  (See id. at 31; Feb. 20,

2018 Pet. Ltr. (Dkt. No. 12))  And to the extent that Gutierrez blames the delay on his lack of

education and time spent in administrative segregation, prison "staff . . . made a bi-lingual

inmate law clerk available to him to assist with his legal work."  (Mot. to Amend, Ex. 2 (Dkt.

No. 16-2) at 3)  Accordingly, equitable tolling does not apply.

For these reasons, amendment would be futile and Gutierrez's motions to amend

and to stay will be denied.  Sookoo v. Heath, No. 09-CV-9820 (JGK), 2011 WL 6188729, at *3

(S.D.N.Y. Dec. 12, 2011) (citations omitted) ("When the claims that a petitioner seeks to add to a

habeas petition are untimely under the one-year statute of limitations provided by the [AEDPA], the amendment is futile, and leave to amend should be denied.").

      **F.**    **<u>Multiple Conspiracies Claim</u>**

            Gutierrez does not object to Judge Aaron's findings regarding his "multiple conspiracies" claim. (R & R (Dkt. No. 48) at 24-26) Accordingly, the Court reviews this portion of the R & R for clear error.

            This Court sees no error in Judge Aaron's finding that this claim is procedurally barred, as Gutierrez did not – in his direct appeal – frame this issue as a federal claim. <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a petitioner "does not fairly present a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim.").

            In any event, this claim fails on the merits. As the First Department found, "[t]here was no need for a multiple conspiracies charge, because the evidence clearly established a single conspiracy." "It was clear from the court's charge that the People were required to prove a murder conspiracy, and the jury could not have been misled to believe that a drug conspiracy would serve as a basis for conviction.'" <u>People v. Gutierrez</u>, 130 A.D.3d 517, 518 (1st Dept. 2015)).

            Gutierrez's objection on this point is overruled.

## CONCLUSION

For the reasons stated above, Judge Aaron's R & R is adopted in its entirety, and Gutierrez's petition (Dkt. No. 2), and his motions to amend and to stay (Dkt. Nos. 12, 16), are denied.

Because Gutierrez has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue under 28 U.S.C. § 2253(c)(1)(A). This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a non-frivolous issue).  The Clerk of Court is directed to mail a copy of this order to Petitioner and to close this case.

Dated:  New York, New York
        March 8, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge